## DUNBAR v. CHARLESTON & W. C. RY. CO.

### (Circuit Court, S. D. Georgia, N. E. D. April 8, 1911.)

DEATH (§ 31*)—DEATH OF HUSBAND—WIFE'S RIGHT TO SUE—TEMPORARY SEPARATION.

> That a wife was temporarily separated from her husband at the time he was killed while in defendant's employ did not affect her right to recover damages under the employer's liability act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1171]) for his wrongful death.
>
> [Ed. Note.—For other cases, see Death, Cent. Dig. §§ 35–46; Dec. Dig. § 31.*]

At Law. Action by Sallie Dunbar, as administratrix of the estate of her deceased husband, against the Charleston & Western Carolina Railway Company, to recover damages for wrongful death under the employer's liability act. At the trial the defendant's counsel offered to prove that the wife, who was suing for the death of her husband, was temporarily separated from him. This was objected to. Objection sustained.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A. L. Franklin and William H. Fleming, for plaintiff.
W. K. Miller, and F. B. Grier, for defendant.

SPEER, District Judge. This question goes pretty far into the subject of domestic relations. Now that is a subject which in its comprehensiveness and intricacies is not surpassed by any other. If the courts, in estimating the value of the husband's life to the wife, should permit counsel to inquire into the degree of affection or intimacy existing between them, such are the complexities of connubial existence, it would probably be true that we could never come to the end of such a case. Of course, it is suspected (perhaps by the uninformed) that husbands and wives have occasionally what are sometimes called "tiffs." Sometimes they separate; but, if they are separated only in one of these "tiffs," it is usually only an elongation of the "tiff." *Varium et mutabile semper fœmina.* A liberal translation may be found in the familiar verse:

> "O woman, in our hours of ease,
> Uncertain, coy, and hard to please;
> When pain and anguish rend the brow,
> A ministering angel thou."

It may be, then, that this wife, though for the time "out with" her Simon, if she had heard he was in trouble, would have flown to become his ministering angel. Separations of this sort do not amount to much. The law gives the parties the *locus pœnitentiæ;* that is (again translating liberally), the opportunity of getting together again. The unhappy pair will be presumed to live in the relationship of husband and wife until they have been separated in the manner pointed out by law. This is by a decree of divorce *a mensa et thoro,* that is (translating strictly), "from bed and board," or *a vinculo matrimonii* (translating liberally), from the sacred bonds of matrimony.

I do not think, therefore, it is safe or justifiable at all in an inquiry of this sort to inquire into the degree of felicity or infelicity which existed between the husband and wife.